# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Tarrie Neely,              )
                                   )
           **Plaintiff,**      )
                                   )       **Case No. 15 C 407**
          **v.**              )
                                   )       **Judge John Z. Lee**
**Officer Garza, Officer Habiak,**  )
**Officer Desai, and Officer Solivan,**  )
                                   )
          **Defendants.**     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Tarrie Neely ("Neely") contends that, in December 2013, City of Chicago police officers David Garza, Paul Habiak, Rishi Desai, and Jorge Solivan ("Defendants") attacked him in violation of his civil rights. Based on the incident, Neely was arrested and convicted of aggravated battery of a police officer and resisting arrest. This *pro se* civil rights action against Defendants pursuant to 42 U.S.C. § 1983 followed. The Court allowed Neely to proceed on claims of false arrest, false imprisonment, excessive force, and failure to provide medical care in violation of the Fourth Amendment. Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to all of Neely's claims. For the following reasons, the Defendants' motion for summary judgment [57] is granted as to all claims.

## I.    Northern District of Illinois Local Rule 56.1

Local Rule 56.1 sets out a procedure for presenting facts that are germane to a party's request for summary judgment pursuant to Federal Rule of Civil Procedure 56. Specifically, Local Rule 56.1(a)(3) requires the moving party to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014). Each

paragraph of the movant's statement of facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." LR 56.1(a). The opposing party must file a response to each numbered paragraph in the moving party's statement, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3)(C). The nonmoving party may also present a separate statement of additional facts "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(C). "[I]f additional material facts are submitted by the opposing party . . . , the moving party may submit a concise reply in the form prescribed in that section for a response." LR 56.1(a).

Because Neely is proceeding *pro se*, Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. *See* ECF No. 60. The notice explained how to respond to Defendants' summary judgment motion and Local Rule 56.1 Statement and cautioned Neely that the Court would deem Defendants' factual contentions admitted if he failed to follow the procedures delineated in Local Rule 56.1. Neely, however, did not respond to Defendants' statement of facts as required by Local Rule 56.1(b)(3).

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be

interpreted so as to excuse mistakes by those who proceed without counsel"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules").

Because Neely has failed to properly respond to Defendant's Local Rule 56.1 Statement, the Court would typically accept Defendant's "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Defendants, however, elected to include Neely's version of events in their Local Rule 56.1 Statement. Thus, their own supposedly undisputed facts are internally contradictory. *See Perez v. Thorntons, Inc.*, 731 F.3d 699, 706 (7th Cir. 2013) ("Where the moving party has undermined its own Local Rule 56.1 assertion through the presentation of contradictory assertions and evidence, a nonmovant's 'admission' of the movant's assertion is not decisive."). Additionally, it is in the Court's discretion to interpret Neely's filings generously consistent with his *pro se* status and construe the record (which includes transcripts from the state court criminal case, as well as Neely's deposition in this case), in the light most favorable to him, to the extent that he has pointed to evidence in the record or could properly testify himself about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013). With these standards in mind, the Court turns to the relevant facts.

## II.     Factual Background

On December 9, 2013, Defendants responded to a dispatched 911 call reporting a possible domestic violence incident involving a person with a knife at 7208 South Wood Street in Chicago, Illinois. State Tr. at 29:19–30:13, 57:1–8, 82:21–83:18, ECF No. 59-1. As the officers arrived at the home, they saw a man (Neely) and a woman (Tanya Tyrone, Neely's wife) standing on the front porch. *Id*. at 31:2–24, 32:4–8, 84:5–13, 107:5–8. The parties agree that

Neely was holding a machete and that Tyrone was standing near him, but from there, their accounts diverge.

### A. Events at Neely's Home

#### 1. The Officers' Testimony in the Underlying Criminal Case

As they approached the porch, Officer Habiak saw that Neely was holding a machete. *Id.* at 108:7–11. All of the officers saw Neely grab Tyrone by the collar and push her down the porch stairs, at which point Officers Garza and Desai realized that Neely was holding a machete. *Id.* at 32:1–15, 85:9–87:1, 107:19–24. The officers drew their service weapons. *Id.* at 33:7–22, 51:8–18, 91:2–14. Neely raised the machete upwards. *Id.* at 32:16–19, 86:14–22, 87:2–7, 108:7–18, 112:8–11. Officer Garza ordered Neely to drop his knife, and Neely complied. *Id.* at 33:20–22, 87:5–24, 112:14–21.

Officer Garza then approached Neely and ordered him to get on the ground, but Neely remained standing. *Id.* at 34:20–24. As Officer Garza reached towards Neely, whose machete was lying on the ground near his feet, Neely kicked Officer Garza's right knee. *Id.* at 35:3–12, 56:5–15, 88:3–19, 112:22–113:2. The kick caused Garza to lose his balance and fall forward toward Neely, who fell backward and began to kick his legs as Officer Desai approached the front porch to assist. *Id.* at 35:2–36:19, 88:24–89:3. Officers Garza and Desai repeatedly told Neely to "stop resisting" but a "struggle ensued" after Neely continued to kick his legs and refused to place his hands behind his back. *Id.* at 36:2–19, 63:6–21, 89:4–90:6. The officers therefore conducted an "emergency takedown" to move Neely from his front porch to his lawn. *Id.* at 36:7–19, 89:13–25.

While lying on the lawn, Neely continued to kick his legs and began to swing his arms and stiffen his body when officers attempted to put his arms behind his back so they could

perform "emergency cuffing." *Id*. at 37:2–14, 90:23–91:14. "It was very chaotic on the front lawn" as Neely continued to kick and made contact with Officers Garza and Habiak. *Id*. at 60:11–61:13, 66:8–14, 113:13–17, 127:18–23. Neely began to "throw[] punches." *Id*. at 66:8–14, 67:5–11. Neely kicked and punched Officer Desai, punched Officer Garza in the stomach, and kicked Officer Habiak. *Id*. at 67:12–22, 91:19–23, 113:13–17. Three officers were necessary to address the situation as Neely "just continued to resist during [the] entire duration of the struggle and was completely uncooperative." *Id*. at 92:21–23. Officer Habiak helped the other officers "gain control" of Neely by kicking Neely, who was still lying on the ground kicking his legs. *Id*. at 37:2–8, 113:13–17, 127:24–128:2. Officers Garza and Desai also utilized open hand strikes by thrusting their palms into Neely's body and ordered Neely to stop resisting, while Officer Desai administered knee strikes. *Id*. at 70:4–17, 91:8–14. Ultimately, Officers Garza, Habiak, and Desai were able to handcuff Neely. *Id*. at 37:9–14, 113:18–114:2. Although Officer Solivan was at the scene, he focused on "making sure that nobody else was jumping in" and did not administer force. *Id*. at 74:5–9. After Neely was handcuffed, he refused to walk to the police wagon, so the officers carried him over. *Id*. at 38:8–11, 93:20–94:1, 114:23–115:5. Following the incident, Officer Habiak had "shoulder soreness" caused by his efforts to restrain Neely. *Id*. at 114:3–12.

### 2.    Neely's Version of Events

Neely elected to testify at his state court criminal trial. According to Neely, on the night of December 9, 2013, he was getting ready to take a bath. *Id*. at 152:24–153:12. His wife asked him to go outside and knock icicles off the gutter so they would not fall on children who were at the couple's home. *Id*. Neely looked in the linen closet and saw his machete. *Id*. He thought "oh, okay, I can go on and knock this down with this, because a broom is too light." *Id*. at 153:2–

154:6; *see also* Neely Dep. at 31:10–17, ECF No. 59-2. Although there was snow on the ground, Trial Tr. at 103:21–24, Neely decided to go outside onto his front porch in a state of undress (no shirt) because he did not anticipate being outside for more than a few minutes. Neely Dep. at 36:1–5. His wife came outside with a jacket as he reached upwards with the machete to knock down icicles. *Id*. at 36:8–18, 38:6–19; *see also* Compl. ¶ 1, ECF No. 1 (alleging that Neely was outside "[k]nocking Ice down off [his] storm drain"). Suddenly, men began to run towards Neely's porch. State Tr. at 155:5–11. Neely surmised that the men must be police officers, so he laid his machete on the porch floor and said, "Excuse me, officers. What's the problem?" [1] State Tr. at 155:5–11; Neely Dep. at 38:20–39:9.

According to Neely, an officer ran up to him and, without any provocation, punched him in the mouth, while another officer grabbed his arm and kicked him in the groin. State Tr. 155:12–23; Neely Dep. at 38:21–39:9. The officers "snatched" Neely from his porch, "power slammed" him to the ground, kicked him in the ribs, and knocked him unconscious. State Tr. 155:12–23; Neely Dep. at 46:1–21. Neely denied punching or kicking any officer. State Tr. at 156:3–8; Neely Dep. at 120:9–22, 121:8–17. During his deposition, Neely testified that he never refused to give his hands to any officer, did not resist in any way, and never heard an officer command him to drop the machete or "do anything." Neely Dep. at 120:9–22, 121:2–17.

After Neely was handcuffed, the officers either picked him up while he "still was dazed" from being rendered unconscious, *id*. at 66:16–22, or picked him up while he was unconscious but then he "came back to" while the officers were carrying him to the transport van "upside down in the air by [his] arms and legs swinging in the air," State Tr. at 156:17–19. The officers then threw Neely into the van, where he again lost consciousness after his head hit a wall inside

---

[1]     In his response to the summary judgment motion, Neely inconsistently states, "I never would have resisted if I had [known] the four white males were police officers." Pl.'s Resp. at 2, ECF No. 66.

the van. Neely Dep. at 66:16–19. The officers took Neely to a police station and left him alone in a room, where he was handcuffed to a wall for approximately three to four hours. *Id.* at 75:8–13, 79:14–17.

At some point, Neely "started beating on the table" and "spitting up blood." *Id.* at 79:21–80:6. He "came back to [his] senses" and asked for medical attention. *Id.* at 75:2–13, 76:1–4, 79:18–80:13, 104:1–14. He spoke with one officer, *id.* at 104:8–14, and in approximately ten minutes, two other officers came and transported him to the hospital; the transporting officers "did not hesitate" and "came right away." *Id.* at 80:14–19, 81:5–20. Neely was treated but "didn't even think to mention that [he] had been kicked in the head several times." *Id.* at 88:10–19. Staff told him that he had bruised ribs and a "busted mouth" and recommended that he "take it easy, and give it a chance to heal." *Id.* at 88:1–12.

### B.    Neely's Criminal Convictions

At trial, a jury convicted Neely of four felony offenses: two counts of aggravated battery to Officer Garza; one count of aggravated battery to Officer Desai; and one count of resisting arrest while causing injury to Officer Habiak. Defs.' 56.1 Stmt., Ex. C (Certified Conviction/Disposition), at 1, ECF No. 59-3; Defs.' 56.1 Stmt., Ex. D (Indictment), ECF No. 59-4. Neely was sentenced to a six-year term of imprisonment. Neely Dep. at 105:13–16. His convictions have not been reversed, and his appeal was pending as of the time of his deposition (March 2016). Neely Dep. at 105:20–24; Defs.' 56.1 Stmt., Ex. C, at 1.

## III.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## IV.   Analysis

The Court allowed Neely to proceed on claims of false arrest, false imprisonment, excessive force, and failure to provide medical care against all Defendants. In his response to Defendants' motion for summary judgment, Neely also asserts for the first time that Defendants violated the Ninth Amendment, violated his right to substantive due process by presenting perjured testimony and fabricating evidence during his state court criminal trial, and maliciously prosecuted him in violation of Illinois law. For the following reasons, Defendants' motion for summary judgment is granted in its entirety, and Neely is not entitled to any relief with respect to his new claims.

### A.    Neely's Excessive Force, False Arrest, and False Imprisonment Claims

In *Heck v. Humphrey*, the Supreme Court held that a § 1983 action for damages is unavailable if success would necessarily imply that a conviction or sentence is invalid, unless the underlying conviction or sentence has been reversed on direct appeal, expunged by executive

order, or declared invalid on habeas review. 512 U.S. 477, 486–87 (1994). According to Defendants, *Heck* bars Neely's § 1983 excessive force, false arrest, and false imprisonment claims because the factual predicate for those claims is directly at odds with his criminal convictions, which have not been invalidated. The Court agrees. Additionally, to the extent that Neely is also attempting to bring a state law claim of false imprisonment, any such claim is untimely as well as unavailing.

### 1. Excessive Force

Neely contends that the officers had no reason to use any force because when he saw them approaching his front porch, he immediately abandoned his icicle-removing effort and placed his machete on the porch floor. In addition, he asserts that he never kicked, hit, or otherwise made contact with the officers, although he also states, "I never would have resisted if I had [known] the four white males were police officers." Pl.'s Resp. at 2. Defendants argue that *Heck* bars Neely's excessive force claim because his contention that he never resisted directly conflicts with his criminal convictions for battery and resisting arrest. Given Neely's *pro se* status, the Court will focus on his contention, set forth in his state court trial testimony and his deposition, that the officers' use of force was excessive because his lack of resistance did not justify the use of any force.[2]

Neely was convicted of three counts of aggravated battery to a police officer (two counts as to Officer Garza and one count as to Officer Desai), in violation of title 720, section 5/2-12-3.05(d)(4)(i) of the Illinois Compiled Statutes, plus one count of resisting arrest while causing injury to Officer Habiak, in violation of title 720, section 5/31-1(a-7) of the Illinois Compiled

---

[2] The Court will not discuss Neely's inconsistent and unsupported contention in his summary judgment response that he resisted because he did not realize that the men who came to his property on the night in question were police officers. In any event, this contention is belied by his conviction for battering a police officer, as described in more detail below.

Statutes. His convictions remain valid.

In Illinois, "[a] person commits aggravated battery when, in committing a battery, other than by the discharge of a firearm, he or she knows the individual battered to be . . . [a] police officer . . . performing his or her official duties . . . ." 720 Ill. Comp. Stat. 5/2-12.3.05(d)(4)(i). To be guilty of aggravated battery to a police officer, Neely must have (1) known that Officers Garza and Desai were police officers performing their official duties; and (2) intentionally or knowingly; (3) voluntarily; (4) without legal justification; (5) caused bodily harm to the officers. *See Tolliver v. City of Chi.*, 820 F.3d 237, 242 (7th Cir. 2016). In turn, it is unlawful to "knowingly resist[] or obstruct[] the performance of one known . . . to be a [police] officer" acting in his or her official capacity. 720 Ill. Comp. Stat. § 5/31-1(a). If resisting or obstructing is "the proximate cause of an injury to a [police] officer . . . [the arrestee] is guilty of a Class 4 felony." 720 Ill. Comp. Stat. 5/31-1(a-7).

To determine if *Heck* bars Neely's excessive force claim, the Court "must consider the factual basis of the [excessive force] claim and determine whether it necessarily implies the invalidity of [the plaintiff's] conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014). As a general rule, an excessive force claim is not necessarily inconsistent with a conviction for resisting arrest, even if an individual has earlier resisted arrest. *See Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) (holding that an excessive force claim does not necessarily imply the invalidity of a conviction for resisting arrest); *see also Boothe v. Sherman*, No. 13 C 7228, 2016 WL 3125005, at *6 (N.D. Ill. June 3, 2016) (collecting cases holding that *Heck* does not bar all excessive force claims because a plaintiff who resists arrest can behave peacefully at another time). A "version of events," however, "[that] negates the mental state necessary to support [a] conviction for aggravated battery of a peace officer . . . necessarily implies the invalidity of [a

§ 1983 plaintiff's] conviction." *Tolliver*, 820 F.3d at 244.

Thus, a plaintiff may not espouse a version of events in support of an excessive force claim that is inconsistent with a criminal conviction that has not been invalidated. *See id.*; *see also Teague v. Armstead*, 82 F. Supp. 3d 817, 825 (N.D. Ill. Mar. 10, 2015) (an excessive force claim "is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction"). This is precisely what Neely is attempting to assert here, as his position at trial and during his deposition was that he was the victim of an unfounded attack and neither touched the officers nor resisted efforts to handcuff him. Because Neely's version of events is inconsistent with his convictions for aggravated battery to a police officer and resisting arrest while causing injury to a police officer, *Heck* bars his excessive force claim against the three officers who handcuffed him and placed him in the squad car. *See Helman*, 742 F.3d at 762 (holding that plaintiff's contention that he did not attempt to draw his weapon until after shots were fired at him could not survive summary judgment because it was inconsistent with his conviction for resisting arrest); *Teague*, 82 F. Supp. 3d at 827 ("The factual basis for the relief [the plaintiff] seeks is, given *Heck*, implausible, for it is that the plaintiff was the victim of an utterly unprovoked assault, and while that conceivably is true, it is barred by *Heck*."). Similarly, to the extent that Neely is arguing that his only contact with the three officers was accidental because he was unconscious, he cannot prevail because his convictions mean that the state court found that his actions were voluntary and either knowing or intentional. *See Tolliver*, 820 F.3d at 243.

Defendants are entitled to summary judgment as to Neely's excessive force claim. [3]

## 2. False Arrest

As with Neely's excessive force claim, the Court must consider if a judgment in his favor as to his false arrest claim would necessarily imply the invalidity of his conviction and sentence. *See Heck*, 512 U.S. at 487. "[A] wrongful arrest claim does not necessarily undermine a conviction" as "one can have a successful wrongful arrest claim and still have a perfectly valid conviction." *Wiley v. City of Chi.*, 361 F.3d 994, 997 (7th Cir. 2004) (internal quotations omitted); *see also Evans*, 603 F.3d at 363–64 (holding that "[m]any claims that concern how police conduct . . . arrests are compatible with a conviction" and can proceed notwithstanding *Heck*, because arrests without probable cause are unconstitutional but do not imply the invalidity of a conviction). "However, where the grounds for the conviction flow from the same facts underlying the allegations of false arrest, the claim is barred by *Heck*." *Szach v. Vill. of Lindenhurst*, No. 14 C 7441, 2015 WL 3964237, at *6 (N.D. Ill. June 25, 2015) (collecting cases).

Here, a finding that Neely was falsely arrested is inconsistent with his state convictions because the state court jury necessarily accepted the officers' version of events, which included probable cause to arrest for aggravated battery and resisting arrest.[4] *See Stoner v. Vill. of*

---

[3]    At his deposition, in response to questioning from defense counsel, Neely testified that following the altercation on the lawn, the officers threw him into a transport vehicle, causing him to hit his head against an interior wall and "black[] out again." Neely Dep. at 66:16–22. His *pro se* complaint and response to the summary judgment motion, however, focus only on alleged excessive force used on the lawn. Thus, the Court will not consider an excessive force claim based on Neely's testimony concerning the transport vehicle.

[4]    The existence of probable cause is an absolute defense to any false arrest claim under § 1983. *See, e.g., McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). "Police ordinarily have probable cause if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" **Error! Main Document Only.**Wagner v. Wash. Cty.*, 493 F.3d 833, 836 (7th Cir. 2007) (quoting *Michigan v. DeFillippo*, 443 U.S.

*Downers Grove*, No. 13 C 1406, 2014 WL 3734165, at *3 (N.D. Ill. July 29, 2014) (holding that *Heck* barred false arrest claim where, "[t]o declare Stoner falsely arrested, a jury would be required to pick between the criminal trial judge's guilty determination and Stoner's claim that there was no probable cause to believe he failed to reduce speed to avoid an accident and was operating a motor vehicle without insurance"). Given his state convictions, he cannot argue in this case that he gave the officers no reason to arrest him, as this necessarily conflicts with the officers' trial testimony that he aggressively resisted arrest. *See, e.g.*, *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("[Plaintiff] adhered steadfastly to his position that there were no drugs, that he was framed; in so arguing he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit . . . ."). Defendants are therefore entitled to summary judgment as to Neely's false arrest claim.

### 3. False Imprisonment

To the extent that Neely is raising a § 1983 false imprisonment claim, "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Thus, as with his false arrest claim, *Heck* bars his false imprisonment claim. *See Serino v. Hensley*, 735 F.3d 588, 590 n.1 (7th Cir. 2013).

To the extent that Neely is raising a state law false imprisonment claim, it is untimely because he was arrested on December 9, 2013, and signed his complaint on December 22, 2014, more than a year later. *See* 745 Ill. Comp. Stat. § 10/8-101 (one-year statute of limitations); *Padilla v. City of Chi.*, No. 07 CV 5253, 2011 WL 3793413, at *7 (N.D. Ill. Aug. 24, 2011)

---

31, 37 (1979)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). **Error! Main Document Only.**"Usually in a § 1983 false-arrest case the jury determines whether the arrest was supported by probable cause; but if the underlying facts are undisputed, the court can make that decision on summary judgment." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013) (citations omitted).

(holding that "the statute of limitations for a [state law] false imprisonment claim begins to accrue when a person is first falsely imprisoned since the person presumably knows he was falsely imprisoned"). Even if this claim were timely, however, it would still fail.

To establish false imprisonment under Illinois law, "a plaintiff must allege that the defendant caused or procured a restraint of the plaintiff without reasonable grounds to believe that the plaintiff was committing an offense." *Henderson v. City of Chi.*, No. 14 C 1164, 2016 WL 3653532, at *8 (N.D. Ill. July 8, 2016) (quoting *Randall v. Lemke*, 726 N.E.2d 183, 186 (Ill. App. Ct. 2000)). The existence of probable cause defeats a state law false imprisonment claim. *Hull v. City of Chi.*, 624 F. App'x 436, 439 (7th Cir. 2015). The state court rejected Neely's version of events and adopted the officers' version. This dooms Neely's state law false imprisonment claim as he cannot relitigate the underlying facts in this lawsuit. *See Johnson*, 2015 WL 6674531, at *6. Defendants are entitled to summary judgment as to Neely's false imprisonment claims.

### B. Deliberate Indifference—Medical Care

Defendants seek summary judgment as to Neely's Fourth Amendment claim based on the alleged failure to provide medical care following his arrest, contending that they were never put on notice that Neely needed medical care and that his injuries were not serious. The Fourth Amendment's "objectively unreasonable" standard "governs the period of confinement between arrest without a warrant and [a probable cause determination]." *Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013) (quoting *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992)). This standard applies to medical care claims brought by arrestees. *See id.*

To survive summary judgment on his Fourth Amendment medical care claim, Neely must identify facts "sufficient to infer that the defendant acted unreasonably in light of the notice

given to the defendant of the plaintiff's medical needs, the seriousness of those needs, the scope of the requested treatment, and the police interests at stake." *Klein v. Curran*, No. 13 CV 5191, 2014 WL 5023486, at *3 (N.D. Ill. Oct. 7, 2014) (citing *Ortiz v. City of Chi.*, 656 F.3d 523, 530 (7th Cir. 2011)). Neely must also show that Defendant's conduct caused the harm that is the basis of his claim. *Ortiz*, 656 F.3d at 531. The severity of Neely's medical condition "'need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendments'" as "'the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor—the scope of the requested treatment.'" *Id.* (quoting *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007)). Moreover, "[t]he Fourth Amendment requires reasonableness, not immediacy." *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010). Because Neely received medical treatment on the evening of his arrest, the Court must consider if he received treatment within a constitutionally permissible timeframe. *See id.* Although the contours of Neely's medical care claim are unclear, the Court has construed his filings liberally and thus will assume that he is asserting that the officers denied him medical care after he had a lapse in consciousness following the altercation on the lawn and again denied him medical care upon his arrival at the police station.[5]

### 1.     Neely's Alleged Lapse of Consciousness While on the Lawn

As noted above, Neely contends that the officers knocked him unconscious during the process of handcuffing him but he regained consciousness while the officers were moving him to

---

[5]      Just as the Court disregarded Neely's testimony concerning the transportation vehicle, Neely Dep. at 66:16–22, in considering his excessive force claim, so also it will disregard this testimony in considering his deliberate indifference claim. His *pro se* complaint and response to the summary judgment motion challenge only the force used on the lawn and the medical needs that he alleges arose due to injuries he incurred during the altercation on the lawn.

the police wagon.[6] Specifically, during his state criminal trial, he testified that he awoke while the officers were carrying him to the transport van, State Tr. at 156:17–19, and during his deposition, he testified that the officers picked him up while he "still was dazed" from being previously rendered unconscious, Neely Dep. at 66:16–22. The officers' position, on the other hand, is that Neely was conscious before they moved him, because he refused to walk to the police wagon. Either way, while the record does not indicate precisely how long Neely purports to have been unconscious, the only reasonable inference supported by his version of events, which the Court must accept for present purposes, is that he was briefly unconscious due to the altercation on the lawn.

This alleged lapse in consciousness, however, is not enough to save his claim from summary judgment. Even if the officers had notice of Neely's medical need, their failure to summon immediate medical care (as opposed to taking him to the police station) is not unreasonable. Police officers are not required "to alleviate all discomfort or distress associated with arrest." *Florek v. Vill. of Mundelein*, 649 F.3d 594, 600 (7th Cir. 2011) (citing *Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007)). Moreover, by his own admission, Neely was conscious shortly after the altercation on the lawn and did not ask for medical aid while en route to the police wagon. Given the lack of a request for care (allegedly due to Neely's "dazed" condition), the Court cannot balance the requested treatment against the seriousness of any medical need. *See Ortiz*, 656 F.3d at 531.

Even construing Neely's filings generously given his *pro se* status, no triable issue of fact exists because "the focus . . . is on the reasonableness of the officers' response once they realized he was unconscious." *See Sallenger*, 630 F.3d at 503. Neely does not state what the officers

---

[6]     The Court can credit Neely's version of the events following the application of handcuffs without running afoul of *Heck* as his conviction for resisting arrest remains valid based on his efforts to resist arrest prior to being handcuffed.

should have done before transporting him to the police station. He did not ask for medical attention on the lawn or later, when he arrived at the police station, and "didn't even think to mention that [he] had been kicked in the head several times" when he received medical assistance later than evening. Neely Dep. at 88:10–19. Moreover, while a lapse in consciousness could signify a serious condition, the record here does not suggest that Neely's purported lapse in consciousness rose to this level given his medical evaluation later in the evening of the night of his arrest, when he was told to "take it easy, and give [his bruised ribs and lip] a chance to heal." Neely Dep. at 88:1–12; *see also Bocchino v. City of Atl. City*, 179 F. Supp. 3d 387, 406 (D.N.J. 2016) (holding that a brief loss of consciousness and a bloody lip is not an objectively serious medical need); *see also Saetrum v. Raney*, No. CIV. 1:13-425 WBS, 2015 WL 4730293, at *15 (D. Idaho Aug. 7, 2015), *aff'd in part and rev'd in part on other grounds*, *Saetrum v. Vogt*, -- Fed. App'x --, No. 15-35656, 2016 WL 7367841, at *2 (9th Cir. Dec. 20, 2016) (concluding that "an officer would be reasonable in concluding that medical assistance was unnecessary for an individual who quickly regains consciousness and does not complain of or show any signs of an injury"). In sum, Neely's version of events regarding his alleged lapse of consciousness does not demonstrate unreasonable conduct by Defendants sufficient to warrant a trial.

### 2. Neely's Condition Upon Arrival at the Police Station

Construing the record in the light most favorable to Neely, following his arrest, the officers would necessarily have been aware that they had used force on Neely, including open hand strikes and kicks, and could have seen that his lip was bloodied. Neely does not contend that he asked for medical aid when he arrived at the police station, before the officers left him alone in a room for approximately three to four hours. Neely asserts that when the officers left, he was still dazed but at some later point, he started "beating on the table" and "spitting up

blood" so he asked for medical attention. In approximately ten minutes, two other officers transported him to the hospital, where he was diagnosed with bruised ribs and a "busted mouth."

Because the officers do not contend that obtaining medical care for Neely upon his arrival at the police station "would have been burdensome or compromised any police interests," the Court focuses on "whether each individual defendant was on notice of [Neely's] condition, the seriousness of [his] medical needs, and whether their failure to act caused [him] harm." *See Ortiz*, 656 F.3d at 530–31. Because Neely did not request medical attention from the officers when he arrived at the police station, he did not affirmatively place them on notice that he believed that he needed medical attention. *See Cobige v. City of Chi.*, No. 06 C 3807, 2009 WL 2413798, at *9 (N.D. Ill. Aug. 6, 2009) (granting summary judgment in favor of a group of defendants because "there is insufficient evidence in the record that they were aware of the seriousness of [the arrestee's] medical condition in the first instance."). One could infer, however, that the officers were in a position to observe Neely at the police station during the brief period of time they spent with him prior to leaving and knew that three of them had recently subjected Neely to force, including kicks and open hand strikes. Thus, one could question whether the officers had notice. Nevertheless, the question on summary judgment is whether a jury could find the Defendants acted unreasonably in failing to seek immediate medical care for Neely, given what they knew and the seriousness of Neely's medical need. *See Ortiz*, 656 F.3d at 531–32, 534. Here, that need was evidently no more serious than during the earlier period on the lawn. And for the reasons explained above, that need was not sufficiently serious to support a claim of deliberate indifference.

Ultimately, the reasonableness of the Defendants' delay is likely moot, because no evidence suggests that the approximately three- to four-hour gap between his arrival and his

evaluation by medical staff caused him any additional harm.[7] *See Ortiz*, 656 F.3d at 531. While Neely claims the officers injured him on the lawn, he does not state that the delay in treatment once he arrived at the station caused him additional injury. Moreover, the treatment eventually prescribed by medical staff was a recommendation to "take it easy, and give it a chance to heal." Neely Dep. at 88:1–12. Thus, at most, the officers are responsible for a three to four-hour delay in receiving a medical evaluation that did not result in any active treatment. Accordingly, Defendants are entitled to summary judgment as to Neely's Fourth Amendment medical care claims.

### C.    Neely's Response to the Motion for Summary Judgment—New Claims

Neely's response includes three new claims: a Ninth Amendment claim; a substantive due process claim based on the officers' alleged use of perjured testimony and fabricated evidence during his state court criminal trial; and a malicious prosecution claim. "[A] plaintiff's response to a motion for summary judgment cannot add claims to his complaint." *Watkins v. Learn It Sys.*, No. 14-CV-8422, 2016 WL 5080490, at *3 (N.D. Ill. Sept. 20, 2016) (citing *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)). In any event, these claims are not meritorious.[8]

As for the Ninth Amendment claim, the Ninth Amendment to the Constitution states that "[t]he enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. It "is a rule of interpretation

---

[7]    The closest Neely comes to describing a new harm caused by the officers' delay is his recollection that, once placed in a room at the police station, he started beating on the table and spit up blood. But even construing his claim liberally, Neely does not allege that the officers' delay caused him to spit up blood. Rather, the blood was the product of his "busted lip," which was injured in the earlier altercation with the officers. Neely Dep. at 79:22–80:6.

[8]    The claims may also be untimely. *See, e.g.*, *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (Illinois's two-year statute of limitations applies to § 1983 claims).

rather than a source of rights." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (citing *Froehlich v. Wis. Dep't of Corr.*, 196 F.3d 800, 801 (7th Cir. 1999)). Thus, Neely is not entitled to relief based on the Ninth Amendment.

As for the substantive due process claim, "[w]itnesses, including experts and police officers, have absolute immunity for the content of their testimony at trial." *Canen v. Chapman*, No. 3:14-CV-315, 2016 WL 695970, at *8 n.6 (N.D. Ind. Feb. 22, 2016) (citing *Briscoe v. LaHue*, 460 U.S. 325, 345 96 (1983)); *Latta v. Chapala*, 221 Fed. App'x 443, 444–45 (7th Cir. 2007)). To the extent that Neely contends that the use of purportedly fabricated evidence at trial violated his right to substantive due process, "then necessarily [this] claim accrues during the trial and implicates the validity of the conviction." *Harris v. City of Chi.*, No. 14-CV-4391, 2015 WL 1331101, at *5 (N.D. Ill. Mar. 19, 2015) (*citing Saunders-El v. Rohde*, 778 F.3d 556, 560–62 (7th Cir. 2015)). Because Neely's conviction has not been invalidated, any substantive due process claim is premature. *See Heck*, 512 U.S. at 490 (until a sentence has been invalidated, the cause of action for damages "does not accrue"); *see also Ellis v. City of Chi.*, No. 13 CV 2382, 2016 WL 212489, at *10 (N.D. Ill. Jan. 19, 2016) (a plaintiff's allegation that the defendant police officers fabricated evidence and provided false testimony went "to the heart of [his] state court conviction" and thus was premature under *Heck*).

Finally, Neely appears to be arguing that the officers maliciously prosecuted him by stating that they had witnessed him engaging in a "domestic dispute" with "Tyrone in which charges were dropped because no such thing occurred." Pl.'s Resp. at 2. The Seventh Circuit has held that "the existence of a state law claim for malicious prosecution renders unavailable § 1983 as a vehicle for bringing a federal malicious prosecution claim." *Saunders-El*, 778 F.3d at 560 (citing *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001)). The Supreme Court has granted

certiorari to determine if the existence of a federal malicious prosecution claim turns on the availability of a state remedy. *See Manuel v. City of Joliet*, 590 F. App'x 641 (7th Cir. 2015), *cert. granted* 136 S. Ct. 890 (2016). Nevertheless, to succeed on either a federal or state law malicious prosecution claim, Neely would need to demonstrate that the underlying criminal proceedings were terminated in his favor. *See*, *e.g.*, *Seiser v. City of Chi.*, 762 F.3d 647, 659 (7th Cir. 2014). Given his conviction and pending appeal, he cannot do so. Thus, any malicious prosecution claim would fail.

**V.     Conclusion**

For the above reasons, Defendants' motion for summary judgment [57] is granted in its entirety. The Clerk is directed to enter final judgment accordingly.

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be

filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

**IT IS SO ORDERED.**           **ENTERED   3/13/17**

_____
**John Z. Lee**
**United States District Judge**